(January 13, 1906.)

# BROWN v. BRACKING.

[83 Pac. 950.]

OBJECTION OF PARTIES TO MINING CONTRACT — EVIDENCE TO SUPPORT JUDGMENT INSUFFICIENT WHEN.

1. Where it is shown that B.' and C. agree to incorporate a mining company, they to pay all the expenses of incorporation, and use their efforts and influence in the sale of treasury stock, the proceeds of which are to be used in the development of the mines, and it is further shown that after such incorporation is perfected and the stock. issued to the respective parties, B. sold seventeen thousand five hundred of his one hundred and seventy-four thousand shares, and C. his entire holding of one hundred and seventy-four thousand shares, a very small portion of the proceeds of which was used in the development of the mines and there was no money in the treasury for development work, an injunction should issue restraining the further sale of individual stock in the corporation until the treasury stock as agreed upon is sold.

2. Where the evidence shows a disregard of the contract entered into prior to the organization by the promoters of a mining corporation and the owners of the mining claims forming the basis for such corporation, and the preponderance of the evidence shows that treasury stock should first be sold to further develop the property, and instead of disposing of treasury stock, large holdings of the individual stock are sold and the proceeds not applied to the development of the property, it is evidence of bad faith, and a judgment in favor of the promoters based upon such evidence should be reversed.

(Syllabus by the court.)

APPEAL from. the District Court of Shoshone County. Honorable R. T. Morgan, Judge.

Action to enjoin the sale of certain mining stock. Judgment for defendant. The appeal is from the judgment. Reversed.

The facts are stated in the opinion.

W. W. Woods, for Appellant.

Respondent and his associates procured their interest by material representations, relied upon by appellants, which

were untrue. They procured such interests for an inadequate consideration. The false representations constitute such constructive fraud as gives a court of equity jurisdiction. (Pomeroy's Equity Jurisprudence, 2d ed., sec. 927.) "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealment or through undue influence, duress, taking advantage of one's weakness or necessities or through any similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired." (2 Pomeroy's Equity Jurisprudence, sec. 1053. Quoted by Chief Justice Fuller in *Moore v. Crawford,* 130 U. S. 122, 128, 9 Sup. Ct. Rep. 447, 32 L. ed. 878; Bispham's Equity, 91; Terry on Trusts, sec. 166.)

William H. Batting, for Respondent.

A participating stockholder cannot complain, even though he or his assignee is a corporate creditor. (*Callanan v. Windsor,* 78 Iowa, 193, 42 N. W. 652.) A purchaser of stock that has voted for an issue of watered bonds or stock is estopped from complaining. (*Wood v. Corry etc. Co.,* 44 Fed. 146, 12 L. R. A. 168.) If the complaining stockholder participated in the act complained of he is barred of his remedy. (*McGeorge v. Big Stone Gap Imp. Co.,* 57 Fed. 262.)

STOCKSLAGER, C. J.—From the record in this case we gather the following facts: In October, 1903, Otto Brown and Emil Tomsche were the owners of the "Montana," "Irene," "Tacoma" and "Tacoma Fraction" lode mining claims, in Lalande and Placer Center mining districts, Shoshone county, Idaho. That Walter J. Bracking and L. J. Columbus were engaged in the mining brokerage business in Wallace, Shoshone county, at the time above mentioned. That about said time an agreement was entered into between plaintiffs, Brown and Tomsche and defendants, Bracking and Columbus, by the terms of which plaintiffs were to deed all of said property

to a corporation to be organized under the laws of Idaho by defendants, at their own expense, such corporation to be capitalized at one million shares of the par value of $1 per share. Defendants were to promote the sale and sell treasury stock of said company at a price thereafter to be agreed upon, for sufficient money to keep development work progressing upon the mining claims. That by reason of their influence in promoting the sale of mines, they would have no difficulty in disposing of treasury stock sufficient to develop said mining properties, so that plaintiffs would never be assessed, and by their efforts and influence they would, within a few months after the organization of said company, make the shares of stock to be given plaintiffs worth twenty-five cents per share; they also agreed to use their diligent efforts and ability to promote the sale of treasury stock, and represented that it would be but fair in the organization of the company, for money to be by them expended and for their labor in organizing said company and promoting the sale of treasury stock, to apportion to each of them out of the capital stock of the company 174,000 shares each, and that the apportionment should stand to plaintiffs, Otto Brown, 550,000; Emil Tomsche, 100,000; and to the said defendants 174,000, to A. C. Olson, 2,000, out of which Brown was to donate 350,000 shares and Tomsche 50,000, and to be known as treasury stock, and to be sold for the purpose of developing the property. That relying on the good faith and promises of defendants, plaintiffs agreed to such terms, and pursuant thereto the Laclede Mining Company was incorporated and stock apportioned according to said agreement; all the parties to whom stock was issued under the terms of the agreement were directors for the first year; Brown and Tomsche made and delivered deed to said corporation for the four mining claims. The main consideration for the conveyance was the promises of Bracking and Columbus to sell the treasury stock of the company and keep up development work on the claims so as to render stock of plaintiffs of market value. It is alleged by the agreement that neither party could sell any undivided stock, and at request of defendants an option was granted to the Shoshone

Abstract Company to sell 100,000 shares of treasury stock at three cents per share, which option was for one year; that plaintiffs kept all their agreements and defendants disregarded the material portions of their agreement, in that they did not sell a share of the treasury stock, nor did either of them contribute anything of value in work or money or anything to keep development work in progress in either of said claims, nor did either or both expend in labor or money in the incorporation of said company, procuring books, stock certificates and seal, to exceed $125. That said Bracking did about the —— day of ————, 1904, sell 15,500 shares of his individual stock, and Columbus prior to August 1, 1904, sold all of his 174,000 shares of stock, and by such sale each of them more than reimbursed themselves for all labor or money expended. That the consideration for which plaintiffs donated 175,000 shares of stock to defendants, each, has wholly failed. That each of said parties is insolvent and unable to respond in damages; that plaintiffs have been damaged in the sum of $20,000; that Bracking has given an option to one Barnard on 75,000 shares of his stock at the rate of four cents per share, and deposited said stock in the State Bank of Commerce to be kept until July 1, 1905, unless sooner paid for at the rate of four cents a share, and any block of said stock in the amount of —— shares or over, may be taken out of said bank at any time upon the payment of four cents a share; and 83,500 shares have been pooled by said Bracking with defendant Laclede Mining Company, Limited, to remain in the custody of said company until July 1, 1905. That said stock is pooled under an agreement with plaintiffs by said Bracking made in 1904 that all their individual stock should be pooled to enable the mining company to sell treasury stock, yet defendant Bracking, in violation of the spirit of said agreement, is selling his written promises to deliver certain blocks of the stock so pooled when the pool expires, and has thus broken the price of treasury stock to the damage of plaintiff; that the only available property of said defendant Bracking is said 158,500 shares of Laclede company stock, and if the option of said Barnard should be exercised, said Bracking

would be at liberty to withdraw four cents a share for the stock so taken up from the State Bank of Commerce, and said Bracking threatens to, and unless restrained will, dispose of all his interests in the 83,500 shares of stock now in pool with said company.

The prayer is that plaintiffs have judgment against defendants for the sum of $20,000; that all the stock standing in the name of defendant Bracking be decreed to belong to plaintiffs; that a preliminary injunction issue to restrain Bracking from in anywise selling or encumbering any of the stock now in pool with defendant mining company, restraining said defendant Bracking or said State Bank of Commerce from paying Bracking any of the purchase price of said stock upon which said Barnard has an option; that the Laclede Mining Company be temporarily enjoined from diverting any of said stock to defendant Bracking, or making any transfer of said stock on its books.

The separate answer of defendant Bracking admits plaintiffs' ownership of the mining claims as alleged; that he was a mining broker as alleged. Denies that he represented to plaintiffs that he would organize a corporation at his expense, etc., as alleged, but avers that about October 19, 1903, plaintiffs solicited his services in the promotion of a corporation, plaintiffs to deed said claims to said corporation, and that it was only at plaintiffs' solicitation that he agreed to form such mining company; that pursuant to such request he and defendant Columbus agreed to organize such corporation as alleged, procure proper books, certificates of stock and seal, at the expense of defendant, promote the sale and sell treasury stock at a price thereafter to be agreed upon at a sufficient sum to keep development work progressing upon said claims. Admits the allegations referring to his representation that by means of his influence he would have no difficulty in disposing of said treasury stock sufficient to develop such property so that plaintiffs should never be assessed. That at the time of the agreement it was understood that none of them were in a position to bear the expense of development of such property. Denies that he ever represented that within a few

months he would make their stock worth twenty-five cents a share or any fixed sum. Admits that he agreed to use his diligent efforts and ability to promote the sale of treasury stock, and admits the division of the stock alleged was at his suggestion as to the shares he and Columbus should have for the organization of the company, sale of treasury stock and money to be by them expended, etc. Denies that there was any agreement prohibiting the sale of individual stock, or to pool stock; alleges it was three months after the formation of the company when defendant Bracking proposed pooling individual stock and Columbus refused so to do, and on that account no pool was formed. Admits the option granted to the Shoshone Abstract Company alleged, and avers that it was surrendered before the expiration of the year at request of plaintiffs. Alleges that all parties have at all times been at liberty to dispose of their individual stock; denies all the other allegations of the complaint and avers that by and through his efforts the assessment work has been kept up; that there is $2,000 in the treasury; that he has only sold 16,500 shares of his stock; that he has exerted every effort in the interest of the corporation and all his acts have been with full knowledge of plaintiffs, and for the best interests of the plaintiffs in the corporation. That this action is brought to harass defendant and wrongfully procure his stock, and is the result of a conspiracy between plaintiffs and unknown persons.

This case was tried without a jury, findings and conclusions filed in favor of respondent, and judgment rendered and entered in his favor for costs. The appeal is from the judgment.

Specifications of particulars in which the evidence is insufficient to sustain the decision and judgment herein are as follows: 1. It is admitted in the pleadings that plaintiffs were the owners of all the property which formed the basis of the Laclede Mining Company. 2. That through the relations of defendants Bracking and Columbus they obtained 350,000 shares of the stock of said company, while plaintiffs retained only 250,000. 3. That the properties conveyed to the cor-

poration were valuable. There is no dispute of Brown's testimony that the property was of the value of $25,000. 4. That the bargain is unconscionable and against equity. The allegations in the complaint that defendants Bracking and Columbus did not, either or both of them, expend more than $120 in money and work, or anything, or keep their part of the contract, and that both had been more than reimbursed by sale of stock, is not denied by either in the answer or by Bracking's testimony, and it was shown by the testimony of Barnard that the stock was worth to the treasury, after he took his option, three cents a share, and that many shares had been sold at an average price of twelve and one-half cents a share. 5. It was shown by the pleadings and evidence, as to part of the consideration by which each of defendants Bracking and Columbus procured the large block of stock apportioned him so as to make the stock of the plaintiffs of some value, that this consideration wholly failed. 6. The evidence shows that Bracking was in the office of the Shoshone Abstract Company when the corporation was formed. Columbus testified that Bracking and said company were in partnership in the mining brokerage business, and that at the first meeting of the Laclede Mining Company, at the instance of Columbus and Bracking, an option was given the Shoshone Abstract Company for 200,000 shares of treasury stock, 100,000 shares at two cents, and balance at three cents a share, which, if consummated, would have given these parties 550,000 shares (more than half of the stock) for $5,120, property of an undisputed value of $25,000, and $5,000 of which would have gone into the treasury of the company for mining development purposes, not benefiting the plaintiffs except incidentally as development would benefit all the parties. 7. The preponderance of the evidence shows that all the parties to the promotion and incorporation agreed to pool all their individual stock until sufficient treasury stock had been sold to develop the mines, and that this agreement was violated from the beginning by both Bracking and Columbus. Bracking does not deny his interest in the sale by Columbus of all Columbus' holdings; he testified, in fact, "There were many transactions

between the Shoshone Abstract Company and myself—statements would be handed me showing how much the company was indebted to me—Columbus sold it all except the 9,000 shares I transferred to him to balance accounts when I left the Shoshone Abstract Company." 8. That all of the admissions in the pleadings and the evidence support the equities of the complaint and show that defendant Bracking had paid no consideration whatever of any kind or nature for the stock of the Laclede Mining Company, now standing in his name on the books of the company. 9. The evidence does not support the findings of fact made by the court. 10. A preponderance of evidence supported the allegations in plaintiff's complaint.

Counsel for respondent Bracking objects to the form of the assignments of error above set forth, for the reason alleged that "they do not allege any error in the findings of the court below; they are merely a recitation of the allegations of the complaint."

The purpose to be served by requiring an assignment of the errors upon which the appellant will rely in the appellate court for a reversal of the judgment is that the respondent may be informed what is to be met to sustain the judgment. It is immaterial what language is used, if it conveys to the respondent the necessary information upon which he may prepare to meet the issue sought to be reviewed. This question was very recently before this court in the case of *Palmer v. Northern Pac. R. R. Co., ante,* p. 583, 83 Pac. 947. The second paragraph of the syllabus says: "Where the specification is sufficient to inform opposing counsel of the grounds of the alleged insufficiency of the evidence to support the verdict, it is sufficient." It occurs to us that appellant by his assignments of error informs respondent that he desires to have this court review the pleadings and evidence and ascertain whether this judgment should be affirmed or reversed. The pleadings are not complicated, neither is the evidence seriously conflicting. The contention of appellant is that respondents Bracking and Columbus did not carry out the agreement entered into by appellants and these two respondents. That

after the organization of the corporation and the issue and delivery of the stock to the respective parties, which is conceded to be as alleged in the complaint, the respondents disposed of large holdings of their individual stock instead of the treasury stock, all of which (400,000 shares) was contributed by appellants for the purpose of paying the expense of organization of the corporation and development of the mines; that none of the treasury stock was ever disposed of by respondents. These facts are not contradicted excepting respondent Bracking testifies that there was no agreement to pool the private holdings of the members of the corporation or that no individual stock should be disposed of until at least half of the treasury stock was exhausted. Bracking further testified that he made every reasonable effort to sell the treasury stock, but failed. He admits that if the books show he sold 17,500 shares of his stock, it is true. He says Columbus sold all of his stock. Columbus testifies that he was engaged in the abstract business in 1903 in October, and after that period with the Shoshone Abstract Company. He testifies: "Q. What association did you have with Mr. Bracking? A. We were in partnership in the brokerage business and promoting mines. Bracking was not a member of the Shoshone Abstract Company. The Court: Did you state that Mr. Bracking and the Shoshone Abstract Company were partners? A. Why, the Shoshone Abstract Company and Mr. Bracking were really partners in the brokerage business. The relation continued from July, 1903, until January, 1904." This is all the evidence given by Mr. Columbus, with the exception of some unimportant statements with reference to a communication with appellant Brown relative to a statement of Mr. Brown that he did not desire to make him trouble, that he was simply after Mr. Bracking. Bracking testifies that he was only an employee of the Shoshone Abstract Company, and that "Mr. Columbus was mistaken in a way when he said he was a partner. I was an employee of the Abstract Company on a commission basis."

An examination of the entire record fails to disclose wherein either of the respondents, Bracking or Columbus, ever con-

tributed to exceed $125 toward the enterprise in compliance with their agreement and this was in the organization of the company—the stock books, seal, etc., necessary to issue stock of the corporation. Soon after the stock was issued and delivered, respondent Columbus disposed of his entire holdings, none of the proceeds of it going toward the development of the mines unless he contributed toward purchasing the stock books, seal, etc., or paid some of the fees necessary in the organization of the corporation under the laws of this state. It is shown that the appellant Brown worked nearly all winter on the claims after the mines were incorporated under the name of the Laclede Mining Company. Brown testifies that "Bracking and Columbus told him to go to some grocery store and get supplies on a note, and I went to Hanes & King and told them we had incorporated a company. They asked me who the promoters were. I told them and they would not take their note but let me have goods on my own say so, and I got about $80 of supplies on my own account; neither Bracking nor Columbus paid any part of that bill; I paid it myself. Columbus, Bracking and I had to sign a note together, the three of us, for supplies from the Coeur d'Alene Hardware Company; neither Bracking nor Columbus paid any part of that note, or me anything for my work. The note was paid by the company after Barnard took hold of it; paid by money out of the company treasury." Tomsche corroborates Brown in all his evidence with reference to the obligations of Bracking and Columbus to incorporate the company at their own expense, do the assessment work, sell treasury stock, etc. It is apparent from the record that Columbus and Bracking did not live up to their agreement in an effort to develop this property. After incorporating the company they began to sell their individual stock and more than reimbursed themselves for all the money they had expended. They did nothing toward developing the mines. Bracking says the work has been practically continuous since the incorporation. With reference to the Coeur d'Alene Hardware Company note for $125 for supplies to be by that company furnished Mr. Brown, he says: "Brown got $155, and Columbus and I paid $30 dif-

ference in cash, and the note was paid by the company.'' This note was paid by the company after Mr. Barnard assumed charge of the property. He describes the work since the incorporation, to wit: "One tunnel sixty feet, one tunnel in the neighborhood of two hundred feet. I understand the lower tunnel three hundred and fifty feet, get my information from newspaper, two cabins built, cars, track, blacksmith-shop and necessary tools. The company got the money from sale of treasury stock under Barnard option.'' All that can be claimed by either Bracking or Columbus for development work since the organization of the company is the $30 claimed to have been paid for supplies furnished Brown by the Coeur d'Alene Hardware Company in excess of the note of $125. It is not contended that Bracking or Columbus had anything to do with inducing Barnard to take the option on the property and develop it by the sale of the treasury stock or his private means. It is shown by the record that since Barnard assumed control of the property, old debts of the company have been paid and a large amount of development work done, that the treasury stock has been selling at an average price of twelve cents a share. Mr. Barnard says: "At the time I was negotiating for this option on Laclede stock Mr. Bracking told me he was hard up for money, that the price was cheap and he wanted me to take 20,000 shares of his stock and pay him $400 for it. I positively refused and said I intended to use the money in buying treasury stock to develop the property. That was before I took hold of the property.'' Thus it is shown that Mr. Bracking, as well as Mr. Columbus, seems to have been more interested in disposing of his individual stock than the treasury stock of the company for the development of the property. If he influenced the sale of treasury stock it must go toward the development of the mine; if private stock the proceeds were his.

From all the evidence in this case we are unable to find anything that indicates good faith on the part of Bracking, and we cannot affirm the judgment of the district court. Judgment reversed and cause remanded to lower court for new trial. Costs to appellant.